UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID PEARCY                                            CIVIL ACTION

VERSUS                                                  NO.  04-2851

MILLER BREWING COMPANY                                  SECTION "N"(4)

### O R D E R AND REASONS

Before the Court is the Motion for Summary Judgment filed by the defendant, Miller

Brewing Company ("Miller").  (Rec. Doc. No. 21).  Plaintiff, David Pearcy, opposes defendant's

motion.  (Rec. Doc. No. 32).  For the reasons that follow, defendant's Motion for Summary

Judgment is **GRANTED**.

### I.  BACKGROUND

Plaintiff, David Pearcy, worked for Anheuser-Busch from 1978 to 1995.

Subsequently, from 1995 to 2000, he worked for Florida Sales, an Anheuser-Busch distributor.  In

October of 2000, in an effort to advance his career, Mr. Pearcy sent a resume to Miller.  A few days

after plaintiff went to New Orleans for an interview, Miller offered him a position as a Senior Sales

Manager in Birmingham, Alabama.  Mr. Pearcy accepted the position and relocated from

Jacksonville, Florida, where he had previously worked, to Birmingham.  At the time, plaintiff was

51 years old.  In his position as Senior Sales Manager, Mr. Pearcy had the responsibility of calling

on two Miller distributors–Supreme Beverage Company ("Supreme"), Miller's largest distributor

in Alabama, and Premium Beverage Company.  Prior to being hired by Miller, Mr. Pearcy had

interviewed with Supreme but was not offered a job there.

When plaintiff first began working for Miller, he was under the supervision of Carlton Derrett. After Mr. Derrett passed away unexpectedly in late 2001, Bridget Robert was promoted to assume his position and became plaintiff's supervisor in early 2002. According to Mr. Pearcy, Ms. Robert was difficult to work with and had compatibility issues with him and several of her other subordinates. Including Mr. Pearcy, Ms. Robert had authority over four Miller employees, whose ages varied.

Beginning in January of 2003, plaintiff began to receive negative feedback from Ms. Robert. In response to his request to be considered for a promotion, Ms. Robert wrote a letter to plaintiff, dated January 28th, in which she pointed out numerous shortcomings of Mr. Pearcy with respect to specific projects and stated that he was not ready for the position in question based on his "current performance, skill sets, and ... inability to take initiative/ownership of specific projects/tasks in order to produce results within [his] assigned territory." Subsequently, on May 3, 2003, plaintiff received a performance review from Ms. Robert, which indicated that he met only seven of twenty "output" goals and that his performance was "generally below expectations," the worst performance rating that he could receive. Ms. Robert further stated in the report that "David's opportunities for improvement revolve around turning goals into results" and that "[h]e will need to focus on working with his distributors to develop solid 'action plans' and processes to deliver on assigned goals." On the positive end, Ms. Robert also remarked that "David's knowledge of the business and his fair and respectful treatment of all that he comes in contact with is quite evident through his Succeed with People value" and that "David's Distributors and Retailers have embraced his relaxed and natural persona." In addition to composing these reviews, Ms. Robert kept personal notes, in which she expressed her dissatisfaction with Mr. Pearcy's work.

In October of 2003, Ms. Robert recommended to Paul Guillie, the General Manager of Sales for the Gulf Coast Marketing Area,  that plaintiff's employment be terminated.  Mr. Guillie agreed, and on October 21, 2003, Ms. Robert and another Miller manager met with plaintiff to notify him of the termination.  At this meeting, Ms. Robert gave Mr. Pearcy a letter entitled "Unacceptable Performance Assessment: 3/31/2003-10/3/2003."  The termination letter consists of three full, type-written pages with the following five headings:  (1) Inability to Effectively Manage the Business; (2) Failure to Complete Assigned Tasks; (3) Lack of Follow-Up at Retail; (4) Ineffective Communication with Assigned Wholesalers; and (5) Administrative/Routine Tasks/Customer Feedback.  In the letter, Ms. Robert points to several specific and general instances in which Mr. Pearcy's performance was unsatisfactory.  Plaintiff refused to sign the letter when asked to do so by Ms. Robert.  At the time, plaintiff was 54 years old.  Approximately two months later, Miller rehired Paul Hays, who, at the time, was 39.  Mr. Hays had known Ms. Robert for several years, as they were both cheerleaders for Louisiana State University in the mid-80s.  He began working for Miller in 1997 as Sales Manager but resigned in May of 2003 due to a desire to work in the medical field.  His rehiring occurred soon after he telephoned Ms. Robert in November of 2003 to inform her that his first child had been born.

Shortly after his discharge, plaintiff returned to Jacksonville, Florida and started a boat-cleaning business.  On January 7, 2004, he filed a complaint with the Miami, Florida office of the United States Equal Employment Opportunity Commission ("EEOC" or "the Commission"), in which he alleged that Miller had discriminated against him based on his age in firing him.  In support of his claims, Mr. Pearcy sent a letter, dated February 18, 2004, to the Senior Investigator at the EEOC's Miami office, in which he attempts to refute each of the allegations made by Ms.

Robert in his termination letter.  Towards the end of the letter to the Senior Investigator, plaintiff states that he believes that the true reason for his termination was that Ms. Robert and Mr. Guillie wanted to replace him with Mr. Hays, someone who was in his mid-30s and whom Ms. Robert had known for years.  Subsequently, the EEOC issued a Dismissal and Notice of Rights with respect to plaintiff's complaint, in which the Commission indicated that it was unable to conclude that the information obtained from Mr. Pearcy establishes violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1).  The document further advised that should plaintiff wish to file a lawsuit against Miller, he was to do so within ninety days of the EEOC's dismissal.

On June 28, 2004, plaintiff filed a complaint against Miller in the United States District Court for the Middle District of Florida.  In the complaint, plaintiff alleges that Miller discriminated against him by terminating him on the basis of his age and seeks to recover for lost wages and benefits, severe emotional distress, emotional pain, suffering, inconvenience, mental anguish and non-pecuniary losses.  The action was subsequently transferred to this Court.  On January 17, 2006, Miller filed the Motion for Summary Judgment currently before the Court.

## II. LAW AND ANALYSIS

A.  Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Before granting a motion for summary judgment, the district court must be satisfied that no reasonable trier of fact could find in favor of

the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (stating that "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict"); *McCarty v. Vastar Res., Inc.*, No. 01-CV-2206, 2002 WL 1837918, at \*2 (E.D. La. Aug. 8, 2002). In determining whether a material issue of fact exists, the evidence and all inferences drawn therefrom must be considered in the light most favorable to the non-moving party. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).

B.  ADEA

The ADEA provides that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In analyzing a claim made under the ADEA, a court must engage in a burden-shifting analysis. *Rachid v. Jack In the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Under such analysis, a court must first consider whether the plaintiff has established a *prima facie* case of discriminatory treatment. *Id.* At this step, the plaintiff's burden is merely one of production, and not persuasion. *Baker*, 430 F.3d at 753. A claimant may establish a *prima facie* case by showing that the following conditions have been met:  (1) he was discharged by the defendant employer; (2) he was qualified for the position from which he was discharged; (3) he was within the class of people protected by the ADEA at the time of his termination; and (4) he was replaced by someone younger or someone outside of the protected class, or he was otherwise discharged because of his age. *Id.* Once the claimant establishes a *prima facie* case of discrimination, there is a presumption of discrimination. *Ratcliff v. ExxonMobil Corp.*, No. 01-CV-2618, 2002 WL 1315625,

at *4 (E.D. La. June 13, 2002), *aff'd*, 57 Fed. Appx. 210 (5th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Thus, the burden shifts to the defendant to show that a legitimate, nondiscriminatory reason motivated it to take the challenged employment action. *Machinchick*, 398 F.3d at 350. The defendant's burden at this stage is likewise merely one of production. *Id.* If the defendant meets this burden, the burden then shifts back to the plaintiff, who has the ultimate burden of persuasion. *Id. See also Baker*, 430 F.3d at 754 (stating that "[a]t all times, the burden of persuasion falls on the plaintiff"). At the final stage, the plaintiff must produce evidence demonstrating either (1) that the defendant's proffered reason is false and is a pretext for discrimination; or (2) that although the defendant's proffered reason is true, the plaintiff's protected characteristic was also a motivating factor behind the challenged action. *Rachid*, 376 F.3d at 312.[1] If the plaintiff produces evidence indicating that age was a motivating factor in the defendant's employment decision, then the defendant must produce evidence showing that it would have taken the same employment action regardless of the presence of discriminatory animus. *Id.* If the

---

[1]The last stage of the burden-shifting framework was slightly modified by the Fifth Circuit in *Rachid v. Jack in the Box, Inc.* in response to the holding of the Supreme Court in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). *See Rachid*, 376 F.3d at 312. Traditionally, ADEA cases were bifurcated by the courts into two groups–those cases in which the plaintiff relies on direct evidence to establish his claim; and those cases in which the plaintiff relies only on circumstantial evidence. *Machinchick*, 398 F.3d at 350. Cases in the former category were analyzed under the *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), "mixed-motive" framework, under which the plaintiff was required to produce direct evidence that discriminatory animus was a motivating factor in the employment decision at issue. *Id.* (quoting *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 896 (5th Cir. 2002)). In response, the defendant was required to prove that it would have taken the same action regardless of discriminatory animus. *Id.* Cases in the latter category were analyzed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "burden-shifting" framework. The *McDonnell Douglas* "burden-shifting" framework is similar to the "burden-shifting" framework identified in *Rachid. See id.* The *McDonnell Douglas* framework, however, does not contain the second alternative in the third stage. *See id.* In *Desert Palace, Inc. v. Costa*, the Supreme Court held that a plaintiff did not need direct evidence to obtain a mixed motive analysis. *See* 539 U.S. 90 (2003). Accordingly, the Fifth Circuit in *Rachid* modified the "burden-shifting" framework. *See Rachid*, 376 F.3d at 312.

employer fails to produce such evidence, then the plaintiff prevails.  *Id.* at 312-313.

1.  Plaintiff's *Prima Facie* Case

With respect to Mr. Pearcy's initial burden, Miller, while denying that Paul Hays "replaced" plaintiff, as that term is used in applicable caselaw, does not challenge the existence of a *prima facie* case.  The Court further finds that plaintiff has indeed established such a case.  First, as stated above, Mr. Pearcy was undisputedly discharged by defendant Miller from the position of Senior Sales Manager.  Second, Mr. Pearcy was qualified for the position of Senior Sales Manager from which he was discharged.  As set forth previously, he worked in the beer industry from 1978 until the time that he was fired in 2003.  Third, it is undisputed that Mr. Pearcy is a member of the class of persons protected by the ADEA, as individuals over the age of 39 fall within the purview of the Act.  *See* 29 U.S.C. § 631(a).  As stated above, Mr. Pearcy was 54 years old at the time the subject employment action took place.  Finally, Paul Hays, who was significantly younger than plaintiff, was hired, in part, to perform the tasks that plaintiff had performed before he was fired and, therefore, seemingly replaced plaintiff.[2]  Accordingly, the burden of production shifts to the defendant.

2.  Defendant's Legitimate, Non-discriminatory Reason

In response to plaintiff's *prima facie* showing of discrimination, Miller asserts plaintiff's poor job performance as its legitimate, non-discriminatory reason for firing him.  Specifically, Miller states that managers at Supreme, which was one of Mr. Pearcy's two clients and

---

[2]Mr. Hays did have a different position than did plaintiff when he was rehired by Miller.  He was designated "Territory Sales Manager."  According to Mr. Hays, his territory consisted of the entire state of Alabama, with the exception of Mobile.  He serviced eight distributors, while plaintiff only serviced two.  Included in the eight, however, was Supreme Beverage Company.  Thus, while Mr. Hays' position was not identical to Mr. Pearcy's, he did assume many of Mr. Pearcy's responsibilities.

is the largest Miller distributor in Alabama, expressed dissatisfaction with plaintiff's efforts on behalf of their company to plaintiff's superiors at Miller.  In this regard, Miller cites to the depositions of Charles Schilleci, owner of Supreme, and Michael Schilleci, Vice President and General Manager of Supreme, who admitted to having spoken negatively about plaintiff to his superiors at Miller.  Further, defendant states that its own employees also judged plaintiff's job performance as deficient in a number of respects.  In support of this contention, Miller refers to plaintiff's termination letter, which, as stated above, specifies five areas of "unacceptable performance."  Miller further points to the negative letter received by plaintiff from Ms. Robert on January 28, 2003 in response to his request to be considered for a promotion and to the substandard performance evaluation received by plaintiff on May 3, 2003.

   The Fifth Circuit has recognized on numerous occasions that poor job performance is a legitimate reason for taking an adverse employment action, such as discharge.  *See, e.g.*, *Machinchick*, 398 F.3d at 354; *Webster v. Texas Eng'g Extension Serv.*, 204 F.3d 1115 (5th Cir. 1999); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991).  Because the burden on Miller at this juncture is one of production, and not persuasion, the credibility of its managers is of no consequence.  *Sandstad*, 309 F.3d at 898.  The Court, therefore, finds that Miller has met its burden of offering a legitimate, non-discriminatory reason for its decision to terminate Mr. Pearcy's employment.  Consequently, the presumption of discrimination created by Mr. Pearcy's *prima facie* case is extinguished.  *See Machinchick*, 398 F.3d at 354 (stating that "[b]ecause PB Power articulated legitimate, non-discriminatory reasons for its decision to terminate Machinchick, the presumption of discrimination created by Machinchick's prima facie case drops from the case").

3.  Pretext / Motivating Factor

   Because the defendant has met its burden of production, the burden shifts back to

-8-

plaintiff, who must avoid defendant's summary judgment by demonstrating that there is a material issue of disputed fact as to discrimination. *Patrick v. Ridge*, 394 F.3d 311, 315-16 (5th Cir. 2004). More specifically, as stated above, Mr. Pearcy must produce sufficient evidence to create a fact issue as to (1) whether Miller's non-discriminatory reason is false and is merely pretext for discrimination, or, alternatively, (2) whether the plaintiff's proffered reason, although true, was only one motivating factor behind the defendant's decision, while the plaintiff's age was another. *Rachid*, 376 F.3d at 312. Plaintiff need not produce direct evidence and may rely on purely circumstantial evidence to meet his burden. *Id*. at 311.

a. Pretext

To succeed in demonstrating pretext, a plaintiff does not necessarily have to bring forth proof as to the defendant's true motive. As noted by the Fifth Circuit in *Sandstad v. CB Richard Ellis, Inc.*, "evidence demonstrating the falsity of the defendant's explanation, taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." 309 F.3d at 897 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-148 (2000)). Accordingly, an ADEA claimant may avoid summary judgment by producing sufficient evidence to create an issue as to the defendant's discriminatory animus or, in some circumstances, the falsity of its stated nondiscriminatory reason for its adverse employment action. *Id*. A plaintiff who attempts to establish pretext based solely on the defendant's veracity is required to put forth evidence rebutting *each one* of the defendant's legitimate, nondiscriminatory reasons for the employment action at issue. *Machinchick*, 398 F.3d at 351.

Evidence tending to show that the employer's stated reason for its action is false will not always create an issue of material fact, however. *Crawford v. Formosa Plastics Corp.,*

-9-

*Louisiana*, 234 F.3d 899 (5th Cir. 2000).   As stated by the Supreme Court in *Reeves*, "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."   *Reeves*, 530 U.S. at 148.  For instance, if the plaintiff creates only a weak issue of fact as to whether the employer's proferred reason is untrue, and there is ample and uncontested independent evidence that no discrimination occurred, then the employer is entitled to summary judgment.  *Id*.  Whether a jury could reasonably infer discrimination from the evidence presented by the plaintiff, and thus whether summary judgment is appropriate, must be determined on a case-by-case basis and depends on a number of factors, including the strength of the plaintiff's *prima facie* case; the probative value of the evidence demonstrating that the employer's reason is false; and any other evidence supporting the employer's case that may properly be considered. *Crawford*, 234 F.3d at 903; *Price v. Fed. Express Corp.*, 283 F.3d 715, 721 (5th Cir. 2002).

As set forth above, Miller alleges Mr. Pearcy's poor work performance as its legitimate, non-discriminatory reason for terminating his employment.  Miller states that not only were its customers dissatisfied with plaintiff's efforts on their behalf, but Miller's own managers were disappointed with plaintiff's work.  To support its claim that it discharged plaintiff because of customer dissatisfaction, Miller refers to the deposition transcript of Charles Schilleci, who testified that he had a conversation with Paul Guillie, during which he stated, "We didn't hire him; why did ya'll hire him?  And my God, do ya'll need people that bad?"  In response, plaintiff states that Mr. Schilleci only had one telephone conversation with Mr. Guillie regarding plaintiff and that Mr. Schilleci did not cite any specific concern about Pearcy's job performance during the conversation. Mr. Pearcy further states that the conversation, which revolved around budget cuts taken by Miller, took place well beforehis termination and that "it seems unlikely that [he] was terminated for a

-10-

conversation which took place ten months to a year before his discharge and which was never even discussed with him." Plaintiff concludes that the conversation between Charles Schilleci and Paul Guillie was not significant enough to support Miller's decision to fire him, and that a genuine issue of material fact thus remains as to Miller's true reason behind its decision.

Plaintiff's argument in this regard is weak, at best, as it does not rebut the reason advanced by Miller. Not once does plaintiff contest that Charles Schilleci, the owner of the largest Miller distributor in Alabama, did, in fact, make the above-referenced negative remark to plaintiff's superior. He merely disputes the overall effect *vel non* that this remark should have had upon his Miller superiors. Whether the effect that Charles Schilleci's statement had on plaintiff's supervisors was reasonable or not, however, is irrelevant for purposes of the motion before the Court. The Fifth Circuit has recognized that the burden-shifting mechanism applied in discrimination cases is not "a device which permits the [factfinder] to examine an employer's reasons for discharge and determine that the employer's business judgment or policies do not appeal to its sensibilities." *Elliot v. Group Med. & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir. 1983). Furthermore, even assuming that the remark made by Mr. Schilleci did not in itself provide a sufficient reason for discharging plaintiff, plaintiff ignores the fact that Miller has advanced numerous other reasons for his termination and that the statement made by Mr. Schilleci, when combined with the other reasons asserted by Miller, easily could have influenced Miller's decision to discharge plaintiff.

As stated above, Miller further points to the deposition testimony of Michael Schilleci in support of its assertion that customer dissatisfaction played a role in its decision to terminate Pearcy. In his deposition, Mr. Schilleci stated that he would characterize Mr. Pearcy's job performance as "poor or mediocre to poor" and that Mr. Pearcy did not do enough to progress Supreme's business. He further stated that he spoke to Ms. Robert on at least one occasion

-11-

regarding concerns about plaintiff's performance and may have had other "off-the-cuff" dialogues with Ms. Robert wherein Mr. Pearcy came up.  In response, plaintiff states that the conversation between Ms. Robert and Michael Schilleci was, again, about budget cuts and that Ms. Robert never states in her deposition that Michael Schilleci was specifically complaining about Pearcy's performance.  The Court notes that Ms. Robert also does not deny in her deposition that she did speak with Mr. Schilleci specifically about plaintiff's performance.[3]  Further, plaintiff does not address the fact that Mr. Schilleci testified that he did, in fact, communicate his concerns regarding Mr. Pearcy to Ms. Robert.

With respect to Miller's allegation that plaintiff was terminated, in part, because of customer dissatisfaction, plaintiff also points to four customer feedback forms which indicated that he either met customer expectation or exceeded customer expectation in all categories.  Mr. Pearcy states that these forms clearly establish that customer satisfaction is in dispute.  The Court disagrees. Mr. Pearcy himself acknowledged that he did not give the forms to the distributors to fill out. Instead, he filled out the forms based on what he was told by his customers, when he should have given the forms to his customers for each to fill out directly.  Mr. Pearcy further admits that Michael Schilleci offered him suggestions for improving his performance when he spoke to Mr. Schilleci regarding the feedback form.  Additionally, plaintiff acknowledged that the feedback forms to which he refers  were not turned in to his supervisors at Miller.  Therefore, the information contained in these forms  was not available to Ms. Robert or Mr. Guillie when they decided to discharge plaintiff. Thus, the positive customer feedback forms that plaintiff brings to the Court's attention, even if

---

[3]In fact, no where in the excerpt of Ms. Robert's deposition that was provided to the Court was she even asked specifically about comments that Michael Schilleci made to her regarding David Pearcy.

accurate, do not present the Court with any reason to conclude that plaintiff's supervisors at Miller were not sincere in their belief that Supreme managers disapproved of plaintiff's work.

Mr. Pearcy further argues that Miller did not assert Supreme's dissatisfaction with his work as a reason for his termination until recently.  He states that Miller did not provide this reason to the EEOC in 2004 when communicating with the Commission and argues that pretext can be presumed where a defendant changes his reasoning for an adverse employment action.[4]  The Court is unable to find support for plaintiff's statement in the record.  To the contrary, in Miller's position statement to the EEOC, dated February 9, 2004, Miller states that Ms. Robert "made clear that [Mr. Pearcy] needed to improve his business acumen and relationships with key distributors/wholesalers and retailers" and that "nine (9) months later, Mr. Pearcy was still failing to improve ... [such] relationships."  Additionally, in the termination letter that plaintiff received from Ms. Robert, Ms. Robert stated the following:  "When discussing your progress with customers, they have stated that you do not provide added value to their wholesaler network."  The Court, therefore, finds plaintiff's arguments in this regard to be without merit.

Miller also offered as a reason for its discharge of plaintiff the dissatisfaction of its own supervisory employees with plaintiff's job performance.  To support its contention that its managers were not pleased with plaintiff's work, Miller points to the detailed, 3-page termination letter that plaintiff received; the substandard review that plaintiff received in May of 2003; the negative letter sent to plaintiff by Ms. Robert in January of 2003 in response to his request to be considered for a promotion; and numerous personal notes made by Ms. Robert regarding her

---

[4]Plaintiff cites the following cases in support of his assertion:  *Schmitz v. St. Regis Paper Co.*, 811 F.2d 131, 132 (2d Cir. 1987); *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993); *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1995); *Brooks v. Monroe Sys. for Bus., Inc.*, 873 F.2d 202, 204 (8th Cir. 1989).

assessment of plaintiff's work.  In attempting to rebut Miller's assertion that Miller fired plaintiff because its managers were not satisfied with his work, plaintiff states that the performance review completed by Ms. Robert on May 8, 2003 "is the first indication that plaintiff's performance was not meeting expectations" and that this evaluation was produced only five months before plaintiff was fired.  This statement is inaccurate.   It is undisputed that the letter sent by Ms. Robert in January of 2003, in response to plaintiff's request to be considered for a promotion, contained numerous specific criticisms of plaintiff's work.  For instance, in the letter, Ms. Robert states with respect to one specific event on which plaintiff worked that his "'recap' brought no VALUE to the distributor nor provided any IDEAS for improving sales."  With respect to another event, she states that he was "unaware of any of the brands being promoted until arrival at the event" and that "there were NO leadership skills exemplified during the set-up of the event."  Further, whether or not the May 8th performance review was the first indication that his performance was not meeting expectations is of no moment.  The Court fails to see what bearing this fact has on whether Miller truly believed that plaintiff's performance was deficient and fired him for that reason.

Mr. Pearcy additionally states that while he didn't meet many of his performance goals listed in the May performance review, he was close to doing so in most instances.  Plaintiff further argues that positive comments by Ms. Robert contained in the performance review, such as, "David's Distributors and Retailers have embraced his relaxed and natural persona" do not support her categorization in the review of his performance being "generally below expectations."   These assertions are likewise unavailing.  Regardless of how close he was to meeting his performance goals, plaintiff does not dispute that he did, in fact, fail to meet 13 out of the 20 goals with listed in the May evaluation.  Further, Ms. Robert's favorable comment is not inconsistent with her overall conclusion that plaintiff's performance was substandard.  As she stated in her deposition, "[People]

-14-

like him.  He's a personable guy, but did he get the job done?  No.  Did he bring value to his wholesalers?  No.  Did he meet the standards of a sales manager at Miller Brewing Company?  No." The fact that plaintiff's supervisors believed that he had some availing qualities does not refute their assertion that they were ultimately unpleased with his performance.

In his opposition to defendant's motion, plaintiff also points to Ms. Robert's comments in his performance review that "David's opportunities for improvement revolve around turning goals into results" and that "he will need to focus on working with his distributors to develop solid 'action plans' and processes to deliver on assigned goals."  He states that these comments do not coincide with the reasons for his discharge that are cited in the termination letter and that none of the reasons stated in the termination letter were mentioned as areas for improvement in the performance review.  Plaintiff further states that because the performance review did not mention points made in the termination letter as areas for improvement, he had no opportunity to improve his performance.

Again, plaintiff's statements do not rebut the assertion that his supervisors were disappointed with his performance.  First, the provisions of the May performance review and the termination letter do not conflict with each other.  Additionally, the fact that the areas of unacceptable performance listed in the termination letter were not included as "areas for improvement" in the May performance review is inconsequential.  Significantly, a number of the events referred to in the termination letter occurred after May of 2003, when the performance review was done.  With respect to Ms. Robert's concerns that arose prior to May, the fact that they were not included in the performance review, which contained a very general assessment of plaintiff's work, does not indicate that they did not exist.  Furthermore, the Court notes that the Fifth Circuit has specifically held that "[t]he ADEA does not prohibit termination without warning."

-15-

Mr. Pearcy additionally attempts to rebut plaintiff's assertion that he was fired because of poor job performance in his February 18, 2004 letter to the EEOC Senior Investigator, wherein he purports to refute each of the instances of unacceptable performance cited by plaintiff. For the most part, in his rebuttal letter, plaintiff does not deny the assertions made by Ms. Robert in the termination letter.  Rather, in many instances, he attempts to explain and justify the failures referred to by Ms. Robert.  In other instances, he merely criticizes Ms. Robert for making certain assertions.  The following are examples of such responses:   In addressing Ms. Robert's criticism that plaintiff advised a wholesaler to do something illegal, plaintiff states as follows:  "[A]fter I suggested that [the distributor] call Sue to see if he could indeed order the product, [the distributor] said that would be illegal.  I find it quite ironic that I informed Ms. Robert of this conversation and my suggestion and she includes it in this documentation!"  In response to Ms. Robert's comments that the AL Business Review "was sent, both times, on e-mail with NO follow up to confirm the review was sufficient" and that "I have always had to follow up with you to discuss the review and request more," plaintiff simply states that "[t]he above is close to incoherent, no comment can be made."  Clearly, such responses hardly serve to refute the statements made by Ms. Robert.

In another portion of the termination letter, Ms. Robert states, "During the MSPs, too much time is spent reiterating everything on the forms you provide instead of conducting two-way communications and developing a plan of action.  You do not provide insight into the numbers or recommendations/directions to improve."  As to this comment, plaintiff states, "I am totally baffled as to why Ms. Robert would mention my Distributor Visitation Report that I developed ... and is used during distributor visits.  The report outlines the topics of discussion ie, sales, ... promotions, ...etc. All of my distributors have commented that no one prior to me has covered as much Miller Brewing Company information in such an organized manner."  Again, although plaintiff brings to

light positive feedback as to the reports mentioned by Ms. Robert, he fails to rebut her contention–namely, that he focuses too much on the reports during monthly sales planning meetings and does not spend enough time conducting two-way communication.

Considering all of the evidence before it, the Court does not find that Mr. Pearcy has brought forth sufficient evidence to create an issue as to whether Miller's non-discriminatory reasons for plaintiff's termination are false and are merely a pretext for discrimination.  As explained above, although plaintiff criticizes Miller's nondiscriminatory explanations for firing him, he certainly has not *rebutted each one* of them, as required by the Fifth Circuit in *Machinchick*.  *See* 398 F.3d at 351.  *See also*, *Sandstad*, 309 F.3d at 899 (finding that to establish an issue of fact, a claimant must do more than merely dispute his employer's assessment of his performance).  Moreover, to the extent that certain statements made by Mr. Pearcy in his letter to the EEOC may tend to rebut specific reasons for termination stated by Miller, such unspecific and unsupported evidence leads to no more than a quite tenuous inference of pretext and is insufficient to support a reasonable inference of discrimination.  *See Crawford*, 234 F.3d at 903.  In light of this, and in light of the fact that there is substantial uncontroverted evidence that no discrimination occurred in connection with Mr. Pearcy's termination,[5] the Court finds that plaintiff has not met his burden of persuasion.  *See Reeves*, 530 U.S. at 148.

b.  Motivating Factor

Because plaintiff has not demonstrated that an issue exists as to pretext, he may only avoid summary judgment by demonstrating that an issue exists as to whether Miller's proffered reason, although true, was only one motivating factor behind the defendant's decision, while the

---

[5]Such evidence will be discussed *infra*, Section II(3)(b).

plaintiff's age was another.  Plaintiff fails in this regard also, as he has produced absolutely no

evidence from which a jury could conclude that his age was a motivating factor in Miller's decision

to fire him.  The only information advanced by Mr. Pearcy in support of his assertion that Miller

fired him because of his age is contained in the last paragraph of his letter to the Senior Investigator

for the Miami EEOC office, wherein he states the following:

> The reason for my termination was not an inability to manage the
> business, completing tasks, communicating, etc.  I was terminated
> because Ms. Robert and Mr. Guillie wanted to replace me with:
> 1)  an ex-employee of their department who resigned from the
> company because he could not get promoted to a Florida position
> 2) Prior to his departure, he was a National Accounts Manager living
> in Birmingham, a promoted position from my position.  His title now
> is Territory Manager an entry title, but doing the same work that I
> performed calling on the same distributors, managing the same
> events, tracking the same sales and distribution reports, etc.
> 3) He was Ms. Robert's cheerleading partner for three years while
> in college
> 4)  He and Ms. Robert worked for the same company prior to their
> employment with the Miller Brewing Company
> 5)  He is in his mid thirties

When deposed, plaintiff testified that the above facts are the *only* facts that caused him to believe

that his discharge was a result of age discrimination.  When asked if he has any facts on which to

base his contention that Ms. Robert intended to fire him in order to replace him with Mr. Hays, Mr.

Pearcy answered, "Not really."   Plaintiff further testified that he never heard Ms. Robert say

anything that reflects a bias against older employees.  In fact, when completing a performance

review of Ms. Robert, plaintiff  gave her a rating of "excellent" in response to the statement "My

manager does not practice discrimination."  Additionally, plaintiff never heard anyone else at Miller

say anything to him that caused him to think that they were biased against him because of his age.


Not only is there no evidence supporting Mr. Pearcy's claims that Miller terminated

-18-

him in order to hire Mr. Hays, but there is positive evidence to the contrary.  First, Ms. Robert's documented criticisms of plaintiff's job performance began at a time when Mr. Hays was still working for Miller and thus seemingly could not have been motivated by an alleged scheme to bring Mr. Hays back to Miller to replace plaintiff.  Additionally, plaintiff was not the only subordinate of Ms. Robert who had compatibility problems with her.  According to plaintiff, employees who were substantially younger than plaintiff did not get along with Ms. Robert.  As plaintiff himself testified, one such employee, who was in his mid-30s, left Miller because he had "managerial concerns with Bridget" and felt that he needed to find a new job because of his relationship with Ms. Robert.  His testimony that some of plaintiff's younger co-employees also had conflicts with Ms. Robert illustrates that she was not targeting plaintiff because of his age when she recommended that he be fired.  Finally, the fact that Mr. Pearcy was hired by Miller at the late age of 51 and then fired shortly after, when he was 54, lends support to the conclusion that he was not fired based on his age.  It is contrary to logic that Miller would hire plaintiff at 51 only to conclude that he was too old for the job once he reached 54.[6]  *See Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (affirming a grant of summary judgment and noting that the same person who recommended hiring the plaintiff later recommended firing him).

Plaintiff's theory that Miller fired him to replace him with Mr. Hays is also flawed in other respects.  Specifically, there is nothing about the cheerleading connection between Ms. Robert and Mr. Hays that advances plaintiff's position that his termination was in violation of the ADEA.  As numerous courts have noted, the ADEA does not restrict an employer's authority to fire

---

[6]The Court acknowledges that this evidence is only slightly probative, as Ms. Robert, who ultimately recommended plaintiff's firing and who worked closely with him, did not take any part in his hiring.  The Court emphasizes that by no means does it consider plaintiff's hiring at 51 and later firing at 54 to be dispositive with respect to defendant's motion.

an employee for a good reason, a poor or incorrect reason, or no reason at all.  *See e.g.*, *Walker v. S. Holdings, Inc.*, 934 F. Supp. 197, 199 (M.D. La. 1996) (citing *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (11th Cir. 1984); *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507 (5th Cir. 1988) (stating that "[t]he ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated").  The ADEA only prohibits employment actions that are unlawfully motivated by age.  *See* 29 U.S.C. § 623(a)(1).  Accordingly, even if Ms. Roberts did, in fact, recommend that Mr. Pearcy be terminated because she wanted to replace him with someone who was a long-term acquaintance, her actions would not automatically be in violation of the ADEA.  In light of the foregoing, the Court finds that Mr. Pearcy has not established an issue of fact as to whether his age was a motivating factor in Miller's decision to terminate his employment.

## III.  CONCLUSION

In sum, the Court finds that Mr. Pearcy has not met his ultimate burden of persuasion. In opposing Miller's motion for summary judgment, plaintiff has done little more than offer to the Court his own subjective belief that he was discharged because of his age.  Such a showing is not sufficient to survive the motion for summary judgment, as Miller has advanced adequate nondiscriminatory reasons for its employment action.  *See Douglas v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (holding that "an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason").  Accordingly, **IT IS HEREBY ORDERED** that Miller's motion for summary judgment is **GRANTED** and that Mr. Pearcy's claims against Miller be, and hereby are, **DISMISSED** with prejudice.

-20-

New Orleans, Louisiana, this ___13th___ of April, 2006.

_____
**Kurt D. Engelhardt**
**United States District Judge**